**WO**

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Alberta M Seamon, | No. CV-23-08523-PCT-MTL |
| Plaintiff, | **ORDER** |
| v. | |
| Navajo Nation Gaming Enterprise, et al., | |
| Defendants. | |

Before the Court is Defendants Navajo Nation Gaming Enterprise ("NNGE") and Colleen Davis's Motion to Dismiss. (Doc. 18.) Because NNGE is immune from Plaintiff Alberta Seamon's claims as an arm of the Navajo Nation, and because Ms. Davis cannot be held individually liable under Title VII of the Civil Rights Act or Title I of the Americans with Disabilities Act ("ADA"), the Court will grant the Motion.

## I.

Ms. Seamon, pro se, is a member of the Diné Nation, also known as the Navajo Nation. (Doc. 9 at 2.) She was employed by NNGE as an administrative assistant at the Twin Arrows Casino and Resort. (*Id.*) She was terminated after approximately four months. (*Id.*)

Ms. Seamon alleges that she was wrongfully terminated and seeks money damages. (*See generally* Doc. 9.) She claims that Defendants violated her rights, discriminated against her based on "race, religion, national origin, and disability (epileptic seizure)," and created a hostile work environment. (*Id.* at 2.) Ms. Seamon says that the hostile work

environment exacerbated her disability. (*Id.*) She specifically accuses Ms. Davis, an NNGE employee at the Twin Arrows Casino and Resort, of "harass[ing] and bull[ying her] whenever she spoke her Indigenous language or shared her Diné culture with guests." (*Id.*)

Ms. Seamon states that she brings claims "of employment discrimination, harassment, and wrongful termination under federal and state laws." (*Id.* at 1.) But she does not specify what these laws are. Viewing her allegations liberally and wholistically, the Court takes Ms. Seamon to allege violations of Title VII of the Civil Rights Act and Title I of the ADA. (*See generally* Doc. 9.)

Defendants move to dismiss Ms. Seamon's Amended Complaint under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). (*Id.*) Because the Court finds that it lacks subject matter jurisdiction over this case as NNGE is immune from Ms. Seamon's claims and there is no individual liability under Title VII of the Civil Rights Act or Title I of the ADA, it does not reach Defendants' arguments brought pursuant to Rule 12(b)(6).

## II.

Federal Rule of Civil Procedure 12(b)(1) authorizes a court to dismiss claims over which it lacks subject matter jurisdiction. Fed. R. Civ. P. 12(b)(1). A Rule 12(b)(1) challenge may be facial or factual. *White v. Lee*, 227 F.3d 1214, 1242 (9th Cir. 2000). When a defendant argues that the claims in the complaint, even if true, are insufficient to establish subject matter jurisdiction, the challenge is a facial one. *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004). In a facial challenge to subject matter jurisdiction under Rule 12(b)(1), courts must accept all material allegations in the complaint as true and construe the complaint in favor of the plaintiff. *White*, 227 F.3d at 1242. "By contrast, in a factual attack [to subject matter jurisdiction], the challenger disputes the truth of the allegations that, by themselves, would otherwise invoke federal jurisdiction." *Safe Air for Everyone*, 373 F.3d at 1039. Courts may look beyond the complaint only when a defendant brings a factual attack against jurisdiction. *White*, 227 F.3d at 1242. In that instance, the court "also need not presume the truthfulness of the plaintiffs' allegations." *Id.* Here, Defendants' challenge is facial. (*See generally* Doc. 18.)

Because Ms. Seamon is pro se, the Court liberally construes the allegations in her Amended Complaint. *Capp v. Cnty. of San Diego*, 940 F.3d 1046, 1052 (9th Cir. 2019) ("We have emphasized that pro se pleadings . . . are to be liberally construed on a motion to dismiss.").

## III.

"Indian tribes have long been recognized as possessing the common-law immunity from suit traditionally enjoyed by sovereign powers." *Santa Clara Pueblo v. Martinez*, 436 U.S. 49, 58 (1978). Relevant here, that immunity extends to claims brought under Title VII of the Civil Rights Act and Title I of the ADA. *See* 42 U.S.C. § 2000e(b) (exempting "Indian tribe[s]" from the definition of "employer" under Title VII of the Civil Rights Act); 42 U.S.C. § 12111(5)(b)(i) (exempting "Indian tribe[s]" from the definition of "employer" under Title I of the ADA).

"Tribal sovereign immunity not only protects tribes themselves, but also extends to arms of the tribe acting on behalf of the tribe." *White v. Univ. of Cal.*, 765 F.3d 1010, 1025 (9th Cir. 2014). The Ninth Circuit has identified five factors that courts must consider in determining whether an entity is an "arm of the tribe" and therefore entitled to share in the tribe's immunity:

> (1) the method of creation of the economic entities; (2) their purpose; (3) their structure, ownership, and management, including the amount of control the tribe has over the entities; (4) the tribe's intent with respect to the sharing of its sovereign immunity; and (5) the financial relationship between the tribe and the entities.

*Id.* (internal marks and citation removed).

If the Court determines that NNGE is an arm of the Navajo Nation, it is entitled to immunity from Ms. Seamon's claims unless the Navajo Nation has waived that immunity. *See Tsosie v. N.T.U.A. Wireless LLC*, No. CV-23-00105-PHX-DGC, 2023 WL 4205127, at *2 (D. Ariz. June 27, 2023).

## A.

The first factor supports recognizing NNGE as an arm of the Navajo Nation as NNGE was organized under Navajo law and is a wholly owned subsidiary of the Navajo

Nation. 5 N.N.C. §§ 1701 (establishing NNGE), 1702(A) (stating that NNGE is "wholly owned by the Navajo Nation"). "District courts in this circuit have recognized that subsidiaries that are wholly owned by an Indian tribe or an arm of the tribe enjoy tribal immunity." *Tsosie*, 2023 WL 4205127, at *2; *see also Dine Citizens Against Ruining Our Env't v. Bureau of Indian Affs.*, 932 F.3d 843, 856 (9th Cir. 2019) (recognizing that the Navajo Transitional Energy Company was an arm of the Navajo Nation in part because it was organized under Navajo law and wholly owned by the Navajo Nation).

**B.**

Similarly, the second factor weighs in favor of NNGE's position because NNGE was created "to conduct gaming operations within the Navajo Nation under the auspices of the Indian Gaming Regulatory Act of 1988 . . ., Navajo Gaming Ordinance . . . and the gaming compacts entered into between the Navajo Nation and any State." 5 N.N.C. § 1703(A). Its purpose is also to "generate gaming revenues and provide a fair return to the Navajo Nation." *Id.* § 1703(B). The Ninth Circuit has previously recognized such an arrangement as suggesting that the entity is an arm of the tribe. *See Allen v. Gold Country Casino*, 464 F.3d 1044, 1046-47 (9th Cir. 2006) (recognizing the defendant casino as an arm of the Tyme Maidu Tribe in part because it was created to conduct gaming on behalf of the tribe).

**C.**

The third factor also supports NNGE's recognition as an arm of the tribe. NNGE is closely controlled by the Navajo Nation. *See generally* 5 N.N.C. §§ 1701-19.  It is subject to the Navajo Nation Council's legislative oversight. *Id.* § 1718. Its board of directors manages its internal operations on behalf of the Navajo Nation Council. *Id.* § 1707(A). That board consists of nine members, a majority of whom must be enrolled members of the Navajo Nation. *Id.* § 1707(B), (D). Finally, its board members must be confirmed by the Navajo Nation Council. *Id.* § 1707(C). These circumstances further indicate that NNGE is an arm of the Navajo Nation. *See Cook v. AVI Casino Enters.*, 548 F.3d 718, 726 (9th Cir. 2008) (finding that the defendant casino was an arm of the Fort Mojave Tribe in part

1    because a majority of its board of directors must be tribe members and the tribe counsel

2    performed corporate shareholder functions for the benefit of the tribe).

### D.

4        The fourth factor also weighs in NNGE's favor. The Navajo Nation has expressly

5    extended its sovereign immunity to NNGE. 5 N.N.C. § 1702(C) ("As a legal entity of the

6    Navajo Nation, the [Navajo Nation Gaming] Enterprise is entitled to the privileges and

7    immunities of the Navajo Nation. The Enterprise shall possess all of the attributes of

8    Navajo sovereignty, including but not limited to immunity from suit . . . ."). Moreover, the

9    Navajo Nation Sovereign Immunity Act, passed by the Navajo Nation Council, states that

10   the Navajo Nation is a sovereign nation immune from suit and includes NNGE within the

11   definition of the "Navajo Nation." 1 N.N.C. §§ 552(Q), 553(A).

### E.

13       Lastly, the fifth factor likewise indicates that NNGE is an arm of the Navajo Nation.

14   NNGE and the Navajo Nation share close financial ties. All of NNGE's net gaming

15   revenues are distributed to the Navajo Nation to be used: "(1) to fund tribal government

16   operations and/or programs; (2) to provide for the general welfare of the tribe and its

17   members; (3) to promote tribal economic development; (4) to donate to charitable

18   organizations; and/or (5) to help fund operations of local government agencies." 12

19   N.N.C. § 2202 (cleaned up); *see also* 5 N.N.C. § 2005. The fact that "the economic benefits

20   produced by the casino inure to the [Navajo Nation's] benefit" further suggests that NNGE

21   is an arm of the Navajo Nation. *Cook*, 548 F.3d at 726.

22       All five *White* factors favor NNGE's position. Accordingly, the Court finds that

23   NNGE is an arm of the Navajo Nation and entitled to sovereign immunity.

### IV.

25       Ms. Seamon does not deny that NNGE is an arm of the Navajo Nation. Instead, she

26   states that "[w]hile NNGE may assert sovereign immunity as an arm of the Navajo Nation,

27   such immunity should not shield them from accountability for alleged discriminatory

28   practices and a hostile work environment. The circumstances of this case warrant

consideration beyond the blanket application of sovereign immunity." (Doc. 22 at 1.)

It is unclear what Ms. Seamon means by "the circumstances of this case." The Court takes her to argue that NNGE has waived its sovereign immunity with respect to her claims. NNGE may indeed waive its immunity, but to do so the waiver must "be approved by the [board of directors] by a duly adopted resolution." 5 N.N.C. § 1705(F). Ms. Seamon has not alleged that any such resolution has been passed. To the contrary, at oral argument she confirmed that none has.

## V.

Finally, Ms. Seamon's claim against Ms. Davis fails. The Ninth Circuit held that there is no individual liability under Title VII of the Civil Rights Act in *Miller v. Maxwell's International Inc.*, 991 F.2d 583, 587-88 (9th Cir. 1993) ("[T]his court's ruling in *Padway* [*v. Palches*, 665 F.2d 965 (9th Cir. 1982)] that individual defendants cannot be held liable for damages under Title VII is good law."). And "[b]ecause Title I of the ADA adopts a definition of 'employer' and a remedial scheme that is identical to Title VII, [the] bar on suits against individual defendants also applies to suits brought under Title I of the ADA." *Walsh v. Nev. Dep't of Hum. Res.*, 471 F.3d 1033, 1038 (9th Cir. 2006) (cleaned up); *see also Purcell v. Am. Legion*, 44 F. Supp. 3d 1051, 1056 (E.D. Wash. 2014) ("Numerous courts, including the Ninth Circuit, have held that there is no individual liability for ADA violations.").

## VI.

Ms. Seamon's Amended Complaint must be dismissed because her claims fail as a matter of law. Moreover, these fatal defects cannot be cured, and thus, the Court will not grant her leave to amend. *See Zucco Partners, LLC v. Digimarc Corp.*, 552 F.3d 981, 1007 (9th Cir. 2009) as amended (Feb. 10, 2009) (noting that the Court may deny leave to amend where amendment would be futile).

Accordingly,

**IT IS ORDERED** that Defendants Navajo Nation Gaming Enterprise and Colleen Davis's Motion to Dismiss (Doc. 18) is **granted**.

1    **IT IS FURTHER ORDERED** that Ms. Seamon's Amended Complaint (Doc. 9) is

2    **dismissed with prejudice.**

3    **IT IS FINALLY ORDERED** that the Clerk of Court shall enter judgment in

4    Defendants Navajo Nation Gaming Enterprise and Colleen Davis's favor and close this

5    case.

6    Dated this 26th day of June, 2024.

7

8

9

10                                        Michael T. Liburdi
                                          United States District Judge

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28